UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE L. GUY,                                   Case No. 11-12828

        Plaintiff,                              Gershwin A. Drain
v.                                              United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                Michael Hluchaniuk
                                                United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 20)**

## I.   PROCEDURAL HISTORY

    A.   <u>Proceedings in this Court</u>

On June 30, 2011, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Bernard A.

Friedman referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability

insurance and supplemental security income benefits.  (Dkt. 3).  On October 1,

2012, this matter was reassigned to District Judge Gershwin A. Drain.  This matter

is currently before the Court on plaintiff's motion to remand and defendant's

motion for summary judgment.  (Dkt. 12, 20).

Report and Recommendation
Cross-Motions for Summary Judgment
*Guy v. Comm'r*; Case No. 12828

B.      Administrative Proceedings

Plaintiff filed the instant claims on March 10, 2008, alleging that he became unable to work on December 6, 2001.  (Dkt. 10-2, Pg ID 170).  The claim was initially disapproved by the Commissioner on June 9, 2008.  (Dkt. 10-2, Pg ID 105-108).  Plaintiff requested a hearing and on February 23, 2010, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Shirley Moscow Michaelson, who considered the case *de novo*.  In a decision dated April 12, 2010, the ALJ found that plaintiff was not disabled.  (Dkt. 10-2, Pg ID 40-61).  Plaintiff requested a review of this decision on June 10, 2010.  (Dkt. 10-2, Pg ID 37-38).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (Dkt. 18-2, Pg ID 780-781), the Appeals Council, on December 13, 2011, denied plaintiff's request for review.  (Dkt. 18-2, Pg ID 776-779); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion to remand be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 47 years of age at the time of the most recent administrative hearing.  (Dkt. 10-5, Pg ID 170).  Plaintiff's relevant work history included approximately 4 years as a machine operator.  (Dkt. 10-6, Pg ID 215).  In denying plaintiff's claims, defendant Commissioner considered post traumatic stress disorder, carpal tunnel, migraines, and sciatic nerve as possible bases of disability. (Dkt. 10-6, Pg ID 214).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since March 10, 2008.  (Dkt. 10-2, Pg ID 45).  At step two, the ALJ found that plaintiff's carpal tunnel syndrome, migraine headaches, degenerative disc disease, bipolar disorder, and post traumatic stress disorder were "severe" within the meaning of the second sequential step.  *Id.*  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 10-2, Pg ID 46).  At step four, the ALJ found that plaintiff could not perform his previous work as a machine operator.  (Dkt. 10-2,

Pg ID 59). At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 10-2, Pg ID 60).

      B.    <u>Plaintiff's Claims of Error</u>

According to plaintiff, the ALJ's conclusion that he has "severe" impairment of carpal tunnel syndrome is internally inconsistent with the conclusion that he has no resulting functional limitations from that impairment. In other words, plaintiff argues that it makes no sense to find a carpal tunnel syndrome impairment as "severe" and discuss positive findings in one paragraph and then discuss the same impairment in another portion of the decision ultimately concluding that he does not require any limitations of the use of his hands or upper extremities. Plaintiff contends that, because the ALJ has found that he has a "severe" impairment of Carpal Tunnel Syndrome, one of two things must have occurred, either of which is reversible error, i.e.:

1.    The Decision is internally inconsistent finding that Carpal Tunnel Syndrome is "severe" yet not providing any work restrictions for this impairment; or

2.    The evidence confirmed in the ALJ's finding at TR. 25 demonstrates that Mr. Guy does have a "severe" impairment of Carpal Tunnel Syndrome and therefore must have some concurrent bimanual

restriction incorporated within the RFC as the jobs listed by the

Vocational Expert would probably not be able to be performed.

Therefore, plaintiff maintains that, due to a faulty RFC leading to jobs listed by the

Vocational Expert that do not supply substantial evidence supporting the ALJ's

decision, this case must be remanded pursuant to sentence four.

Plaintiff also requests a remand under sentence six because he was

suspected of having multiple sclerosis four months after the April 2010 decision,

according to an August 2010 brain MRI (see enclosed Ex. B. Progress Note dated

4/4/11). Dr. Beall indicated that as of December 27, 2010, plaintiff "possibly"

fulfills the MRI space criteria for MS under the McDonald's criteria. As of March

21, 2011, plaintiff was diagnosed with recurrent myelopathic quadriparesis and

then on April 4, 2011, he was diagnosed with Multiple Sclerosis meeting the

McDonald criteria. Plaintiff points to a letter dated May 6, 2011 from the

neurologist stating:

> Mr. Guy is under my care for multiple sclerosis. He will
> have periodic attacks of blindness, paralysis, tremors,
> pain, urinary incontinence which will be unpredictable
> and may last for days, weeks, or months.

In a medical exam ordered by DDS on March 31, 2008, plaintiff complained of

parasthesia of both legs.  (Tr. 360).  At the hearing, when discussing plaintiff's

back pain, he was asked about his lower extremities:

Report and Recommendation
Cross-Motions for Summary Judgment
*Guy v. Comm'r*; Case No. 12828

>     Yes, I have tingling in my legs also sometime, I have
>     tingling in my legs. When I have, have a little pain when
>     I walk sometime, I, the pain in my back sent a tingling,
>     down both of my legs.

(Tr. 43). Plaintiff argues that, although his testimony was made in reference to his back pain, numbness and a tingling feeling in the extremities can be early symptoms of multiple sclerosis, which can only be adequately evaluated with a new hearing.

Plaintiff contends that this evidence is considered "new" because it did not exist prior to the ALJ's denial and was just recently discovered. Four months after the April 12, 2010 decision, plaintiff had an MRI of the brain, which showed white matter of the bifrontal lobes which were nonspecific and can be associated with Migraine headaches or a demyelinating process. Plaintiff points out that the ALJ has already found that he has migraine headaches, but in retrospect plaintiff contends that it shows he had multiple sclerosis, which is far more serious and can more negatively impact the ability to perform work. Plaintiff argues that this evidence also meets the "material" element as it will not only impact the RFC due to the added restrictions associated with multiple sclerosis, i.e., fatigue, balance, and cognitive limitations, but it sheds a new light on this case and associated symptoms about which plaintiff testified. Plaintiff says there is a possibility that he may have a Listing Level impairment under the multiple sclerosis criteria. And,

Report and Recommendation
Cross-Motions for Summary Judgment
*Guy v. Comm'r*; Case No. 12828

without a new hearing and fresh look at the medical evidence due to this newly

discovered medical impairment, plaintiff says he would not be able to have a full

and fair hearing of all of his medical impairments and the impact these

impairments have on his ability to work.

      C.     Commissioner's Motion for Summary Judgment

      According to the Commissioner, plaintiff does not directly challenge the

substantial evidentiary basis for the ALJ's assessment of his RFC.  Instead,

plaintiff only challenges the ALJ's decision for being "internally inconsistent."

The Commissioner points out that this argument – that a decision is "internally

inconsistent" and thus subject to challenge if an impairment is found "severe" at

step 2 but does not draw specific limiting provisions later in the ALJ's RFC

assessment – has been refuted repeatedly in this Circuit.  *See e.g.*, *Griffeth v.

Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007), endorsing *Yang v.

Comm'r of Soc. Sec.*, 2004 WL 1765480, at *4-5 (E.D. Mich. 2004).  In *Yang*,

the plaintiff argued – just as plaintiff argues in this case – that "if a limitation is

found to be severe at step two of the sequential analysis," then it must be

specifically accounted for by limiting the jobs that the plaintiff could perform.  *Id.*,

2004 WL 1765480, at *4.  The *Yang* court rejected plaintiff's argument, finding

that it "conflat[ed] the step-two analysis with the RFC determination" and

"distort[ed] the meaning of both."  *Id*.  This is because the showing required for a

finding that an impairment is "severe" at step 2 is "de minimis." *Id.*, citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "[T]he application of the requirement to establish 'severity' is quite 'lenient,'" the *Yang* court explained, and generally is "'employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id.*, quoting *Higgs*. The RFC assessment, "on the other hand," is "an 'assessment of [the claimant's] capacity for work,' once his limitations have been considered." *Id.* at *5, citing 20 C.F.R. § 416.945(a). The RFC assessment is "meant 'to describe the claimant's residual abilities or what the claimant can do, not what maladies a claimant suffers from - though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities.'" *Id.*, quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Therefore, the court concluded in *Yang*, a "claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Id.*

The Commissioner contends that plaintiff argues just the opposite in this case. And he errs, for all the reasons the court explained in *Yang*. The Commissioner also points out that *Yang* not only rejected plaintiff's legal argument but did so on very similar facts: Yang also had the severe impairment of CTS. Nonetheless, the court in *Yang* found it was appropriate based on the record for the ALJ to conclude that plaintiff experienced no significant limitation from

Report and Recommendation
Cross-Motions for Summary Judgment
*Guy v. Comm'r*; Case No. 12828

his CTS in terms of his ability to perform work at the light exertional level. *Id*. at

*5. The two findings were not "inconsistent." *Id*. at *4-5. The Sixth Circuit

endorsed *Yang* and likewise has refuted plaintiff's "internally inconsistent"

argument. *See Griffeth*, 217 Fed.Appx. at 429 ("'A claimant's severe impairment

may or may not affect his or her functional capacity to do work. One does not

necessarily establish the other' . . . The regulations recognize that individuals who

have the same severe impairment may have different RFCs depending on their

other impairments, pain, and other symptoms") (quoting *Yang* and citing 20 C.F.R.

§ 404.1545(e)). Thus, the Commissioner urges the Court to reject plaintiff's

argument because the ALJ's decision is not "internally inconsistent."

Additionally, the Commissioner also points out that, in the RFC assessment, the

ALJ specifically noted the "lack of objective evidence establishing that the

claimant does in fact have carpal tunnel syndrome," the "Neurologists' opinion

that [plaintiff] does not really require splints," and the neurologists'

"recommendation that the claimant carry on with normal physical activity" –

together with daily activities that plaintiff confirmed he could perform. (Tr. 27).

The Commissioner asserts that all of this evidence led the ALJ to reasonably

conclude that despite her step 2 finding of a medically determinable impairment,

plaintiff did "not require any limitations related to the use of his hands or upper

extremities." (Tr. 27). According to the Commissioner, the ALJ amply supported

Report and Recommendation
Cross-Motions for Summary Judgment
*Guy v. Comm'r*; Case No. 12828

her RFC finding with substantial evidence in the record, and her step 2 finding did

not *ipso facto* render that finding unacceptable.  Finally, to the extent plaintiff

advances the argument that the hypothetical questioning to the vocational expert

was improper because it failed to incorporate manipulative limitations, this

argument is entirely derivative of his mistaken argument that the RFC assessment

was faulty.  Just as the law is clear that a finding of a severe impairment at step 2

is not necessarily inconsistent with an RFC that does not impose limitations based

on that particular impairment, the law in this Circuit is equally clear that "[n]ot all

impairments deemed 'severe' in step two need be included in the hypothetical."

*Markel v. Comm'r of Soc. Sec.*, 2009 WL 3271191, at *9 (E.D. Mich. Oct. 13,

2009) (citing *Griffeth*).  Therefore, the Commissioner contends that the ALJ

committed no error.

As to plaintiff's sentence six argument, among other things, the

Commissioner argues that the proffered evidence does not relate to the period at

issue and therefore is not material to the ALJ's decision.  Where evidence "does

not relate to the period on or before the date the ALJ rendered his decision," it is

not "material" to the outcome of that case.  *Dispaine v. Astrue*, 2011 WL 4528868,

at *7 (E.D. Tenn. 2011), citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d

680, 685 (6th Cir. 1992).  The evidence at hand involves a diagnosis of multiple

sclerosis that long post-dated the ALJ's decision in this case.  It appears from the

records that plaintiff was diagnosed with confirmed multiple sclerosis in April

2011 (Tr. 697) – a year after the ALJ concluded his review of this matter.  (Tr. 30).

This diagnosis appears to have been partially aided by an MRI performed in

August 2010 (again, after the ALJ's decision); the MRI contained nonspecific

findings that were interpreted as potentially indicative of a demyelinating

process.  (Tr. 705).

      According to the Commissioner, plaintiff presents no reason to believe that

he was in fact experiencing multiple sclerosis during the time pertinent to this

appeal.  Although it is always possible that an illness existed before it was

definitively diagnosed, the Commissioner points out that plaintiff bears the burden

when seeking a sentence six remand.  Here, plaintiff was being treated by

neurologists throughout the time period at issue; he had prior MRIs, interpreted as

normal, including one that was performed less than a year before he claimed to

have become disabled (Tr. 177); and the letter plaintiff provides from his treating

physician, Dr. Bell, accompanying the recent treatment records does not offer an

opinion that plaintiff in fact experienced multiple sclerosis before April 2010.  (Tr.

697).  On the contrary, the evidence in this case is all the more clearly immaterial

to the present appeal because Dr. Bell does not even attest that plaintiff

experiences limitations from his multiple sclerosis at the present time.  Instead, Dr.

Bell states that plaintiff "will" experience periodic attacks that "will be"

unpredictable.  (Tr. 697).  Thus, the Commissioner contends that Dr. Bell offers an

opinion about limitations that may or will arise in the future, whereas the current

appeal involves assessing functional limitations that existed in the past.

And, while plaintiff suggests that his headaches could have been caused by

MS in the past, he offers no medical evidence to support this suggestion.  Even if

he had come forward with the necessary evidentiary support, the Commissioner

also argues that plaintiff also overlooks that disability determinations do not turn

on diagnoses, but rather on the functional limitations caused by the claimant's

impairment, whatever its label.  Evidence that Plaintiff subsequently was

diagnosed with early MS would not be material to the ALJ's assessment of the

functional limitations from plaintiff's past headache symptoms, and plaintiff has

offered no basis upon which to conclude otherwise.  The Commissioner also notes

that plaintiff filed a new application for disability benefits on October 6, 2011 and

asserts that this is the appropriate vehicle through which to pursue a claim related

to any new diagnoses and changes in plaintiff's functional capabilities, rather than

a remand of the present matter.  (Tr. 685).

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

   B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in

substantial gainful activity, benefits are denied without
further analysis.

Step Two:  If the claimant does not have a severe
impairment or combination of impairments, that
"significantly limits ... physical or mental ability to do
basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

    "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

        1.    Carpel tunnel syndrome

In *Griffeth v. Comm''r of Soc. Sec.*, 217 Fed.Appx. 425, 427-28 (6th Cir. 2007), the Sixth Circuit considered and rejected an argument similar to the one raised by plaintiff here:

> Griffeth's second contention is that the ALJ's analysis
> was internally inconsistent because he classified
> Griffeth's impairment as "severe" but treated it as

"non-severe." At step two of the sequential evaluation process the ALJ determined that because Griffeth's depression was a medically determinable impairment that caused "some" limitations of his ability to perform "some" basic work-related activities, it was a "severe" impairment. Later in his analysis he determined that Griffeth's depression had only a minimal effect on his ability to concentrate.

...

The ALJ did not misinterpret the severity regulation. At step two "significant" is liberally construed in favor of the claimant. The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 404.1520a(d). The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out "totally groundless claims." We have construed the step two severity regulation as a "*de minimis* hurdle" in the disability determination process. Under a Social Security policy ruling, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe." SSR 96-3p (July 2, 1996).

The ALJ's determination that Griffeth's depression caused "some" limitation of his ability to do work activity is consistent with a finding that Griffeth's depression caused more than a minimal limitation in his ability to do basic work activities. The ALJ's finding that the limitation was more than minimal, however, was not inherently inconsistent with his finding that the limitation has "little effect" on the claimant's ability to perform basic work [ ]related activities. Because the ALJ gave Griffeth the benefit of the doubt at step two of the sequential analysis, the ALJ went on to consider not only Griffeth's "severe" impairments, but all of Griffeth's

> other impairments as well, and made his determination
> based upon the effects of the combination of
> impairments on Griffeth's ability to perform basic
> work-related activities. This expanded review worked to
> Griffeth's benefit, not to his detriment.

(Internal citations omitted); *see also Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001) ("The ALJ's finding that Boyd had 'a combination of impairments that is severe' did not foreclose a finding that Boyd had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding."); *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. 2004) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.").

In his response, plaintiff acknowledges *Griffeth*, but continues to assert that even if it is not internally inconsistent to have a "severe" manipulative impairment with no concurrent restriction in the RFC, it is still reversible error in this Circuit. Plaintiff's argument in support of this theory is merely a re-write of his "internal inconsistency" theory. Plaintiff points out that the record contains three neurological evaluations of plaintiff's carpal tunnel syndrome. (Tr. 474-492). Plaintiff then asserts that while the ALJ mentions all three examinations in the evaluation of the evidence and finds a "severe" impairment of carpal tunnel syndrome, he still concludes that plaintiff does not require any limitations related to the use of his hands or upper extremities. (Tr. 25-27). According to plaintiff's

20

response, "[t]he record is clear that ALJ Michalson found that Mr. Guy has a "severe" impairment of Carpal Tunnel Syndrome and the confirmation of Left Ulnar Neuropathy by EMG as cited by ALJ Michalson.  (Dkt. 23) (internal citations omitted).  Based on this observation, plaintiff argues that "whatever you label the claimant's problem involving his upper extremities, he still has residual problems with numbness, tingling, and a pins and needles sensation causing him to drop objects. Combined with objective evidence of Left Ulnar Neuropathy demonstrates that there should be some restriction contained within the RFC to accurately portray Mr. Guy's physical problems involving his upper extremities." *Id*.  However plaintiff recasts this argument, it is still based on his theory of "internal inconsistency" and that if the ALJ finds an impairment to be "severe", then there *must* be resulting functional limitations in the RFC.  This is not, however, the law in this Circuit.  As set forth above, it is well-established that the existence of an impairment does not necessarily result in a functional limitation. Moreover, plaintiff fails to explain how the ALJ's conclusion is unsupported by substantial evidence.  While there may be some evidence in the record showing that plaintiff suffered from some effects of carpal tunnel syndrome at certain points in time, plaintiff fails to explain how this undercuts the ALJ's decision that his carpel tunnel syndrome did not result in any functional limitations.

2.    Sentence six remand

The Court may remand a case under two separate circumstances identified in 42 U.S.C. § 405(g). These two kinds of remand are referred to as "sentence four" and "sentence six" remands due to their placement in the statute. In a sentence four remand, the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand entered pursuant to sentence four must accompany an order affirming, modifying, or reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). A sentence six remand is appropriate "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Unlike a sentence four remand, in a sentence six remand, the Court "does not rule in any way as to the correctness of the administrative determination." *Melkonyan,* 501 U.S. at 98. Instead, the remand is the result of new evidence "that was not available to the claimant at the time of the administrative proceeding and that ... might have changed the outcome of the prior proceeding." *Id.* At this time, only plaintiff's request for a remand under sentence six is at issue.

Under sentence six of 42 U.S.C. § 405(g), plaintiff has the burden to demonstrate that this evidence is "new" and "material" and that there is "good

cause" for failing to present this evidence in the prior proceeding.  *Hollon v.*

*Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006); *Longworth v. Comm'r of*

*Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005).  Courts "are not free to dispense with

these statutory requirements."  *Hollon*, 447 F.3d at 486.  "Good cause" is *not*

established solely because the new evidence was not generated until after the

ALJ's decision; the Sixth Circuit has taken a "harder line" on the good cause test.

*Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986); *see*

*also Perkins v. Apfel*, 14 Fed.Appx. 593, 598-99 (6th Cir. 2001).  A plaintiff

attempting to introduce new evidence must explain why the evidence was not

obtained earlier and submitted to the ALJ before the ALJ's decision.  *See Hollon*,

447 F.3d at 485; *see also Brace v. Comm'r*, 97 Fed.Appx. 589, 592 (6th Cir. 2004)

(claimant's decision to wait and schedule tests just before the hearing with the

ALJ did not establish good cause); *Cranfield v. Comm'r*, 79 Fed.Appx. 852, 859

(6th Cir. 2003).  Additionally, in order to establish materiality, plaintiff must show

that the introduction of the new evidence would have reasonably persuaded the

Commissioner to reach a different conclusion.  *Foster v. Halter*, 279 F.3d at 357;

*Sizemore v. Sec. of HHS.*, 865 F.2d 709, 711 (6th Cir. 1988); *Hensley v. Comm'r*

*of Soc. Sec.*, 214 Fed.Appx. 547, 550 (6th Cir. 2007).

     The mere existence of a condition, even a condition such as multiple

sclerosis, does not equate to disability.  That is, simply because plaintiff suffers

（header略）

from a certain condition or carries a certain diagnosis does not equate to disability or a particular RFC. Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002); *see also Roark v. Astrue*, 2011 WL 1226874, at *4 (E.D. Ky. 2011) ("it is the demonstrated functional limitations imposed by a condition in a particular individual, not the mere diagnosis, that determine disability"). Thus, the mere existence of any condition from which plaintiff may have suffered does not necessarily mean that condition is "severe" under the Act or that his RFC would be different because of it. In this case, plaintiff has not established either that he suffered from multiple sclerosis during the time frame under review by the ALJ or that he was somehow more limited because of this diagnosis during that same time. Simply, plaintiff does not adequately explain why or how the records submitted would have reasonably persuaded the ALJ to make a different decision for the period at issue and thus, the undersigned concludes that a sentence six remand based on the post-decision records is not appropriate. Further, evidence of the aggravation or deterioration of a condition is not relevant because it "does not demonstrate the point in time that the disability itself began." *Sizemore v. Sec'y of Health & Human Serv's.*, 865 F.2d 709, 712

(6th Cir. 1988).  For these reasons, a sentence six remand is not appropriate.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion to remand be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 19, 2013                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on <u>February 19, 2013</u>, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: <u>Lewis M. Seward, Theresa M. Urbanic, AUSA, and
the Commissioner of Social Security</u>.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7850
                                           tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Guy v. Comm'r*; Case No. 12828